******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* HAJI
JHMALAH BISCHOFF
(SC 20302)

Robinson, C. J., and McDonald, D'Auria,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to statute (§ 54-194), "[t]he repeal of any statute defining or pre-
scribing the punishment for any crime shall not affect any pending
prosecutions or any existing liability to prosecution and punishment
therefor, unless expressly provided in the repealing statute that such
repeal shall have that effect."

Pursuant further to statute (§ 1-1 (t)), "[t]he repeal of an act shall not affect
the punishment, penalty or forfeiture incurred before the repeal takes
effect . . . ."

The defendant was convicted of and sentenced to an effective term of
incarceration of five years for possession of narcotics, among other
crimes, in connection with events that occurred in 2014. After the defen-
dant's arrest but prior to his conviction in 2016, the legislature amended
the statute (§ 21a-279) under which the defendant was convicted, effec-
tive October 1, 2015, by changing possession of narcotics from a class
D felony with a maximum sentence of seven years of imprisonment
to a class A misdemeanor with a maximum sentence of one year of
imprisonment. After the defendant unsuccessfully appealed from the
judgment of conviction, he filed a motion to correct an illegal sentence,
arguing, inter alia, that the legislature had intended its 2015 amendment
to § 21a-279 to apply retroactively. The trial court dismissed the motion
to correct, and the defendant appealed to the Appellate Court, which
directed the trial court to deny rather than to dismiss the defendant's
motion, concluding, inter alia, that the 2015 amendment did not apply
retroactively. On the granting of certification, the defendant appealed
to this court. *Held*:

1. The Appellate Court correctly determined that the defendant was properly
sentenced in accordance with the version of § 21a-279 that was in effect
when he committed the crimes of which he was convicted: this court
has interpreted §§ 54-194 and 1-1 (t) to embody a presumption that
changes to criminal statutes prescribing or defining punishment apply
prospectively only, unless the statute expressly states otherwise, the
plain language of the 2015 amendment did not indicate that it was to
apply retroactively, and, contrary to the defendant's claim, the legislature
did not intend to exclude ameliorative changes to sentencing schemes
from the presumption against retroactivity derived from §§ 54-194 and
1-1 (t); moreover, because the legislature was aware that this court has
interpreted §§ 54-194 and 1-1 (t) as requiring an explicit expression of
intent regarding retroactivity to overcome this presumption, the legisla-
ture's silence regarding retroactivity in the 2015 amendment was evi-
dence of an intent that it have prospective application only; furthermore,
the defendant could not prevail on his claim that prospective only appli-
cation of the 2015 amendment would lead to an absurd and unworkable
result on the basis that the 2015 amendment was meant to implement
a 2015 budget bill that the legislature anticipated would result in fiscal
savings for the Department of Correction, as nothing in the language
of the budget bill or its legislative history referenced the 2015 amendment
or the fiscal savings that would be realized from the 2015 amendment.

2. This court declined the defendant's invitation to adopt the amelioration
doctrine, which provides that amendments to statutes that lessen their
penalties are applied retroactively, and to overrule *State* v. *Kalil* (314
Conn. 529), which recently rejected the applicability of that doctrine:
*Kalil* thoroughly considered whether to adopt the amelioration doctrine
only six years ago and was based on approximately 100 years of prece-
dent during which time the legislature took no action to suggest any
disagreement with this court's interpretation and application of §§ 54-
194 and 1-1 (t); moreover, this court's analysis in *Kalil* was consistent
with this court's analysis of the defendant's claim regarding the retroac-

tivity of the 2015 amendment to § 21a-279, demonstrating that there were no conflicts or difficulties in applying the holding of *Kalil*.

(*One justice concurring separately*)

Argued September 11, 2020—officially released January 15, 2021*

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of possession of narcotics with intent to sell by a person who is not drug-dependent, possession of narcotics with intent to sell and possession of narcotics, and with one count of the crime of possession of less than four ounces of a cannabis-type substance, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, and tried to the jury before *Dennis, J.*; verdict and judgment of guilty of one count of possession of less than four ounces of a cannabis-type substance and of two counts of possession of narcotics, from which the defendant appealed to the Appellate Court, *Sheldon, Elgo* and *Bright, Js.*, which affirmed the judgment; thereafter, this court denied the defendant's petition for certification to appeal; subsequently the court, *Doyle, J.*, dismissed the defendant's motion to correct an illegal sentence, and the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Lavine* and *Harper, Js.*, which reversed the trial court's denial of the motion to correct an illegal sentence and remanded the case with direction to deny the motion, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Emily H. Wagner*, assistant public defender, with whom, on the brief, was *Judith L. Borman*, senior assistant public defender, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *Craig P. Nowak*, senior assistant state's attorney, and *Jennifer F. Miller*, assistant state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. In 2015, our legislature amended General Statutes (Rev. to 2015) § 21a-279 (a) to reclassify a first offense for possession of narcotics from a class D felony subject to a maximum sentence of imprisonment of seven years to a class A misdemeanor subject to a maximum sentence of one year of incarceration. Public Acts, Spec. Sess., June, 2015, No. 15-2, § 1 (Spec. Sess. P.A. 15-2).[1] This legislative action reflected a change in public policy that emphasized treatment and rehabilitation over incarceration for those convicted of possessing controlled substances. In this certified appeal, we are asked to determine whether the legislature's action applies retroactively to criminal cases pending at the time the amendment became effective.

The defendant, Haji Jhmalah Bischoff, was arrested and charged with, among other crimes, possession of narcotics in violation of § 21a-279 (a) prior to the enactment of Spec. Sess. P.A. 15-2, § 1. He was not convicted and sentenced, however, until *after* the amendment's enactment. The defendant claims that both the trial court and the Appellate Court incorrectly determined that Spec. Sess. P.A. 15-2, § 1, does not apply retroactively, and, thus, he claims that the sentence imposed on him was illegal, as it exceeded the maximum sentence allowed under § 21a-279 (a) as amended. Specifically, he claims that (1) although the plain language of Spec. Sess. P.A. 15-2, § 1, does not mention retroactivity, a prospective-only application of the amendment would lead to an absurd or unworkable result when viewed in the context of Public Acts 2015, No. 15-244 (P.A. 15-244), the state budget bill that Spec. Sess. P.A. 15-2, § 1, was meant to implement, and (2) alternatively, this court should overrule *State* v. *Kalil*, 314 Conn. 529, 107 A.3d 343 (2014), and adopt the amelioration doctrine, which presumes that amendments to statutes that mitigate punishment apply retroactively. We disagree with the defendant on both accounts and affirm the Appellate Court's judgment.

The following facts and procedural history are supported by the record and relevant to our review of the defendant's claims. On the basis of conduct that occurred in 2014, a jury in 2016 found the defendant guilty of possession of heroin in violation of § 21a-279 (a), possession of cocaine in violation of § 21a-279 (a), and possession of less than four ounces of marijuana in violation of § 21a-279 (c). See *State* v. *Bischoff*, 182 Conn. App. 563, 568–69, 190 A.3d 137, cert. denied, 330 Conn. 912, 193 A.3d 48 (2018). After the defendant's arrest but prior to his conviction and sentencing, the legislature amended § 21a-279 (a), with an effective date of October 1, 2015, reclassifying a first violation of § 21a-279 (a) as a misdemeanor punishable by not more than one year of incarceration. At the defendant's 2016 sentencing, his counsel requested that the trial court sen-

tence him in accordance with the amended version of § 21a-279 (a). He argued that the policy underlying the amendment—providing assistance, not punishment, to nonviolent drug users—should apply retroactively to him. The trial court declined this request, merged the defendant's convictions of possession of heroin and possession of cocaine into a single conviction of possession of narcotics, and sentenced him to seven years of incarceration, suspended after five years, and three years of probation. As to his conviction of possession of less than four ounces of marijuana, the trial court sentenced him to a concurrent term of one year of incarceration.

The defendant appealed from the judgment of conviction to the Appellate Court and, among other things, renewed his argument that he was entitled to be sentenced on the conviction of possession of narcotics pursuant to Spec. Sess. P.A. 15-2, § 1, which, he claimed, applied retroactively to his case. Id., 579. The Appellate Court rejected the defendant's claim, relying on *State* v. *Moore*, 180 Conn. App. 116, 124, 182 A.3d 696, cert. denied, 329 Conn. 905, 185 A.3d 595 (2018), which held that Spec. Sess. P.A. 15-2, § 1, did not apply retroactively. Id. The defendant petitioned for certification to appeal, which this court denied. See *State* v. *Bischoff*, 330 Conn. 912, 193 A.3d 48 (2018).

The defendant then filed a motion to correct an illegal sentence, the subject of the present appeal, again arguing that the legislature intended Spec. Sess. P.A. 15-2, § 1, to apply retroactively, or, alternatively, that the amelioration doctrine should apply. The trial court dismissed the motion, and the defendant appealed to the Appellate Court, which, in a per curiam opinion, again held that Spec. Sess. P.A. 15-2, § 1, does not apply retroactively, and, like the trial court, rejected application of the amelioration doctrine, ruling that it was bound by this court's holding in *State* v. *Kalil*, supra, 314 Conn. 529.[2] *State* v. *Bischoff*, 189 Conn. App. 119, 121–22, 206 A.3d 253 (2019). The defendant petitioned this court for certification to appeal, which we granted, limited to the following issues: (1) "Did the Appellate Court properly determine, in *State* v. *Moore*, [supra, 180 Conn. App. 116] that [Spec. Sess. P.A. 15-2, § 1], does not have retroactive effect?" And (2) "[i]f the answer to the first certified question is '[yes],' should this court overrule the retroactivity analysis contained in *State* v. *Kalil*, [supra, 314 Conn. 552] and apply the amelioration doctrine to give retroactive effect to Spec. Sess. P.A. 15-2, § 1?"[3] *State* v. *Bischoff*, 331 Conn. 926, 926–27, 207 A.3d 28 (2019).

Although "[a] claim that the trial court improperly denied a defendant's motion to correct an illegal sentence is [typically] reviewed pursuant to the abuse of discretion standard"; (internal quotation marks omitted) *State* v. *Brown*, 310 Conn. 693, 701–702, 80 A.3d

878 (2013); in the present case, the defendant's motion to correct an illegal sentence raises two questions of law, over which our review is plenary: (1) whether the trial court properly construed Spec. Sess. P.A. 15-2, § 1, not to apply retroactively; see *Walsh* v. *Jodoin*, 283 Conn. 187, 195, 925 A.2d 1086 (2007); and (2) whether this court should overrule *Kalil* and recognize the amelioration doctrine. See, e.g., *State* v. *Ashby*, 336 Conn. 452, 492, 247 A.3d 521 (2020).

I

The defendant first claims that we must interpret Spec. Sess. P.A. 15-2, § 1, to apply retroactively. The defendant concedes that the plain language of Spec. Sess. P.A. 15-2, § 1, does not mention retroactivity. He asserts that the legislature enacted P.A. 15-244, a budget bill, under the impression that Spec. Sess. P.A. 15-2, § 1, a budget implementing bill, would reduce the prison population and save the Department of Correction (department) millions of dollars. The defendant argues that, if Spec. Sess. P.A. 15-2, § 1, is not applied retroactively, the department would not attain those savings, an absurd and unworkable result that would violate the legislature's constitutional duty to pass a balanced budget. See Conn. Const., amend. XXVIII (codified at Conn. Const., art. III, § 18 (a)). As a result, he contends, this court must examine relevant extratextual sources, including a fiscal note authored by the Office of Fiscal Analysis showing that the legislature intended Spec. Sess. P.A. 15-2, § 1, to apply retroactively. See Office of Fiscal Analysis, Connecticut General Assembly, Fiscal Note, House Bill No. 7104, An Act Implementing Provisions of the State Budget for the Biennium Ending June 30, 2017 Concerning General Government Provisions Relating to Criminal Justice.

In response, the state contends that the Appellate Court—in *Moore*, in the defendant's direct appeal, and in the present case—correctly determined that, in the absence of explicit language regarding retroactivity, Spec. Sess. P.A. 15-2, § 1, is presumed to apply only prospectively, i.e., only to cases brought after its effective date. The state argues that a prospective application would not lead to an absurd or unworkable result when Spec. Sess. P.A. 15-2, § 1, is viewed in the context of the relevant savings statutes, General Statutes §§ 1-1 (t) and 54-194. We agree with the state.

A criminal "statute is said to have retroactive application if it applies to crimes allegedly committed prior to its date of enactment. . . . The question is one of legislative intent and is governed by well established rules of statutory construction." (Citations omitted.) *State* v. *Nathaniel S.*, 323 Conn. 290, 294, 146 A.3d 988 (2016). Specifically, "to ascertain and give effect to the apparent intent of the legislature . . . General Statutes § 1-2z directs this court to first consider the text of the statute and its relationship to other statutes to deter-

mine its meaning. If, after such consideration, the meaning is plain and unambiguous and does not yield absurd or unworkable results, we shall not consider extratextual evidence of the meaning of the statute. . . . Only if we determine that the statute is not plain and unambiguous or yields absurd or unworkable results may we consider extratextual evidence of its meaning such as the legislative history and circumstances surrounding its enactment . . . [and] the legislative policy it was designed to implement . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 614–15, 72 A.3d 394 (2013).

We therefore begin our analysis with the language of Spec. Sess. P.A. 15-2, § 1, the first clause of which provides: "Section 21a-279 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2015*) . . . ." (Emphasis in original.) Spec. Sess. P.A. 15-2, was passed on June 20, 2015, and § 1 is silent on whether it applies retroactively. The effective date of Spec. Sess. P.A. 15-2, § 1, October 1, 2015, is therefore the only textual reference to the date of applicability found in Spec. Sess. P.A. 15-2, § 1, and indicates that the change in punishment for violating § 21a-279 would take effect months after its enactment, not retroactively.

The defendant counters that this court may not treat the effective date as dispositive of the legislature's intent regarding retroactivity.[4] We agree and do not rely on the act's effective date as the only relevant textual evidence of the legislature's intent regarding retroactivity. The courts in *Kalil* and *Moore* did not, either. Rather, we consider the effective date in light of the applicable savings statutes and the legislature's lack of any reference to retroactivity.

Section 1-2z directs that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself *and its relationship to other statutes*." (Emphasis added.) Because Spec. Sess. P.A. 15-2, § 1, repealed and replaced[5] the penalty structure for the crime of possession of narcotics, the state argues that §§ 54-194 and 1-1 (t), two of our savings statutes, are related statutes for statutory construction purposes, and, thus, our interpretation of Spec. Sess. P.A. 15-2, § 1, is controlled by their presumption against retroactivity. We agree.

The plain language of § 54-194 provides that "[t]he repeal of any statute defining or prescribing the punishment for any crime shall not affect any pending prosecution or any existing liability to prosecution and punishment therefor, unless expressly provided in the repealing statute that such repeal shall have that effect." Section 1-1 (t) provides that "[t]he repeal of an act

shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, or prosecution, or proceeding pending at the time of the repeal, for an offense committed, or for the recovery of a penalty or forfeiture incurred under the act repealed.''

This court has interpreted these statutes to mean that there is a presumption that changes to criminal statutes prescribing or defining punishment apply prospectively only, unless the statute expressly states otherwise. See *State* v. *Kalil*, supra, 314 Conn. 552 (presumption that criminal statutes apply prospectively is derived from §§ 54-194 and 1-1 (t)). This presumption ''can be overcome only by a clear and unequivocal expression of legislative intent that the statute shall apply retrospectively . . . [which may be determined by examining the language of the statute and] the relationship of [the statute] to related statutes . . . .'' (Citation omitted.) *Mead* v. *Commissioner of Correction*, 282 Conn. 317, 325, 920 A.2d 301 (2007); see also *State* v. *Nowell*, 262 Conn. 686, 701–702, 817 A.2d 76 (2003).[6]

As noted, the defendant does not contend that the plain language of Spec. Sess. P.A. 15-2, § 1, clearly overcomes this presumption. Rather, he argues that this presumption does not apply in the present case because the legislature did not intend for these savings statutes to apply to ameliorative changes to sentencing schemes, and, thus, these statutes are not in fact related statutes for statutory construction purposes in determining the meaning of Spec. Sess. P.A. 15-2, § 1.[7] Specifically, the defendant argues that §§ 54-194 and 1-1 (t) do not apply to Spec. Sess. P.A. 15-2, § 1, because, historically, these savings statutes were adopted to prevent common-law abatement, not to prevent a defendant from receiving the benefit of an ameliorative statute.

It is true that these savings statutes were enacted ''to counter the effect of the common-law abatement doctrine.'' *State* v. *Kalil*, supra, 314 Conn. 556. The history of the statutes, however, does not support an argument that the legislature intended to exclude ameliorative amendments from the presumption against retroactivity derived from §§ 54-194 and 1-1 (t)).

We refer to these statutes as ''savings statutes'' because they ''preserve all prior offenses and liability therefor so that when a crime is committed and the statute violated is later amended or repealed, defendants remain liable under the revision of the statute existing at the time of the commission of the crime. . . . [S]avings statutes were enacted to prevent defendants from escaping punishment by allowing the state to pursue them under prior versions of a statute, regardless of whether the newer revision imposed a greater or lesser penalty.'' (Citations omitted.) *State* v. *Graham*, 56 Conn. App. 507, 511, 743 A.2d 1158 (2000). ''At common law, the repeal of a criminal statute abated all prosecutions which had not reached final disposition

in the highest court authorized to review them. . . . Abatement by repeal included a statute's repeal and [reenactment] with different penalties. . . . And the rule applied even when the penalty was reduced. . . . To avoid such results, legislatures frequently indicated an intention not to abate pending prosecutions by including in the repealing statute a specific clause stating that prosecutions of offenses under the repealed statute were not to be abated." (Citations omitted.) *Bradley* v. *United States*, 410 U.S. 605, 607–608, 93 S. Ct. 1151, 35 L. Ed. 2d 528 (1973). "As a way of preventing abatements of criminal prosecutions and other liabilities when legislatures failed to provide special savings clauses in the repealing legislation, state legislatures began in the [nineteenth] century to adopt general savings statutes applicable thereafter to all repeals, amendments, and reenactments of criminal and civil liabilities. For criminal prosecutions, therefore, these statutes shifted the legislative presumption from one of abatement unless otherwise specified to one of [nonabatement] in the absence of contrary legislative direction." (Footnote omitted; internal quotation marks omitted.) *Holiday* v. *United States*, 683 A.2d 61, 66 (D.C. 1996), cert. denied sub nom. *Palmer* v. *United States*, 520 U.S. 1162, 117 S. Ct. 1349, 137 L. Ed. 2d 506 (1997).

To the extent that the history of the savings statutes leaves any ambiguity as to their applicability, this court's interpretation of these statutes lays to rest any doubt. Since at least 1936, this court has held that changes to criminal sentencing schemes, even those that provide a benefit to defendants, are subject to these savings statutes. See *Simborski* v. *Wheeler*, 121 Conn. 195, 183 A. 688 (1936) (applying statutory predecessor to § 54-194 when amendments to method of carrying out death penalty would have benefited defendant).[8] This is due to the language of § 54-194, which provides in relevant part that it applies to "[t]he repeal of *any* statute defining or prescribing the punishment for any crime. . . ." (Emphasis added.) On the basis of this language, courts in this state have concluded that "[i]t is obvious from the clear, unambiguous, plain language of the savings statutes that the legislature intended that the defendant be prosecuted and sentenced in accordance with and pursuant to the statutes in effect at the time of the commission of the crime . . . regardless of whether the newer revision imposed a greater or lesser penalty." (Citations omitted.) *State* v. *Graham*, supra, 56 Conn. App. 511, citing *Simborski* v. *Wheeler*, supra, 198–200.

In light of this plain language and history, this court consistently has held that these savings statutes embody a legislative intent of only prospective application of changes to criminal statutes defining or prescribing punishment, unless otherwise specified explicitly, regardless of whether the change benefits defendants. See *State* v. *Kalil*, supra, 314 Conn. 552 (holding that

§§ 54-194 and 1-1 (t) apply to changes to sentencing schemes of criminal statutes, even those that benefit defendant); *State* v. *Harris*, 198 Conn. 158, 168, 502 A.2d 880 (1985) (rejecting defendant's argument that he should not be prosecuted under statute in effect at time of crime but under amended statute, and stating that, "[i]n order to accept the defendant's argument . . . [the court] would have to ignore the savings clause embodied in . . . § 54-194"); *State* v. *Carbone*, 172 Conn. 242, 256, 374 A.2d 215 (repeal of statute was not retroactive "[s]ince the defendants were liable to prosecution at the date of the repeal, [and, thus] § 54-194 preserves that liability"), cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977), and cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977); *State* v. *DeMartin*, 171 Conn. 524, 528–29, 370 A.2d 1038 (1976) (in determining whether amended statute applies, "§ 54-194 is dispositive" that "a crime committed prior to the effective date of the repealing act remains punishable under the terms of the prior statute" unless amended statute expressly provides otherwise (internal quotation marks omitted)); *State* v. *Pastet*, 169 Conn. 13, 22, 363 A.2d 41 (§ 1-1 (t) applied to repeal of sentencing statute, and, thus, repeal was not retroactive), cert. denied, 423 U.S. 967, 96 S. Ct. 297, 46 L. Ed. 2d 270 (1975); *State* v. *Pastet*, 152 Conn. 81, 85, 203 A.2d 287 (1964) ("[i]n the absence of any expressed legislative intent that [the public act] should apply retroactively, we dismiss this attempt by the defendant [to persuade the court otherwise] without further comment"), citing General Statutes §§ 1-1 (t) and 54-194; *Dortch* v. *State*, 142 Conn. 18, 29, 110 A.2d 471 (1954) (savings statutes applied to change to criminal sentencing scheme and prevented retroactive application when "[t]he legislature expressed no intent that [the amended statute] should operate retrospectively"); *Simborski* v. *Wheeler*, supra, 121 Conn. 197–98, 199 (The court applied the statutory predecessor to § 54-194 when amendments that changed the method of carrying out the death penalty would have benefited the defendant because "[t]he situation before [the court was] clearly within the intent of . . . provisions [the legislature previously had enacted pertaining to the repeal of statutes]. In effect they attach to every act repealing a statute within their purview a saving clause . . . under which the repealed statute still remains in full effect as regards any matter covered by it.").[9]

On the basis of this extensive case law, dating back to the 1930s, we must assume that the legislature is aware of how we have interpreted and applied §§ 54-194 and 1-1 (t).[10] The legislature has not amended these savings statutes, manifesting its acceptance of our interpretation of them. See *State* v. *Kalil*, supra, 314 Conn. 556 (legislature has not amended §§ 54-194 and 1-1 (t) for more than 130 years); see also *State* v. *Lombardo Bros. Mason Contractors, Inc.*, 307 Conn. 412, 440, 54

A.3d 1005 (2012) ("[o]nce an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision" (internal quotation marks omitted)).[11] Thus, §§ 54-194 and 1-1 (t) apply to any change to a criminal statute prescribing or defining punishment and are related statutes for purposes of interpreting Spec. Sess. P.A. 15-2, § 1.

Additionally, because we must assume that the legislature is aware that we have interpreted §§ 54-194 and 1-1 (t) as requiring an explicit expression of intent regarding retroactivity to overcome this presumption, we likewise must assume that the legislature's silence regarding retroactivity in Spec. Sess. P.A. 15-2, § 1, is evidence of an intent for prospective application only. Specifically, in light of our well established interpretation of §§ 54-194 and 1-1 (t), the fact that Spec. Sess. P.A. 15-2, § 1, is silent regarding retroactivity does not create ambiguity. See *State* v. *Orr*, 291 Conn. 642, 653–54, 969 A.2d 750 (2009) ("[t]he fact that . . . relevant statutory provisions are silent . . . does not mean that they are ambiguous" (internal quotation marks omitted)). Rather, this silence "indicates that the legislature intended [the amendment] to be applied prospectively only." *State* v. *Kalil*, supra, 314 Conn. 558; see also *State* v. *Harris*, supra, 198 Conn. 168 (because we must presume that legislature was aware of savings statute, and related case law, we also must presume that it did not intend for amendment at issue to apply retroactively when amendment made no mention of retroactive application). Accordingly, Spec. Sess. P.A. 15-2, § 1, is subject to only one reasonable interpretation—that it applies only prospectively.

Moreover, the straightforward rule created by these savings statutes—that changes to the sentencing scheme of a criminal statute are not retroactive unless explicitly stated—is supported by the legislature's directive in § 1-2z that we ascertain the meaning of a statute "in the first instance . . . from the text of the statute itself and its relationship to other statutes." This rule also makes for sound policy because, by requiring the legislature to be explicit regarding retroactivity, these savings statutes help eliminate the possibility of ambiguity regarding an amendment's applicability, an issue inherent in any amendment altering criminal penalties that could be resolved by legislative clarity rather than judicial interpretation.

Nevertheless, the defendant asserts that we must consider Spec. Sess. P.A. 15-2, § 1, in the context of not only the savings statutes, but also in light of P.A. 15-244, the budget bill he claims it was meant to implement. He argues that, even if it is assumed that the text of the amendment and its relationship to the savings statutes

yield a plain and unambiguous meaning requiring prospective application only, this reading leads to an "absurd and unworkable result." The crux of the defendant's argument is that P.A. 15-244 anticipated a certain amount of fiscal savings for the department, which was supposed to be accomplished by Spec. Sess. P.A. 15-2, § 1, and, without retroactive application, Spec. Sess. P.A. 15-2, § 1, cannot accomplish its purpose, thereby creating an unbalanced budget in violation of the legislature's constitutional duty to pass a balanced budget. See Conn. Const., amend. XXVIII. As a result, the defendant contends, this court may examine extratextual sources to determine the legislature's intent, including a fiscal note authored by the Office of Fiscal Analysis regarding Spec. Sess. P.A. 15-2, § 1. See Office of Fiscal Analysis, Fiscal Note, House Bill No. 7104, supra. The defendant maintains that the fiscal note shows that the legislature intended the amendment to apply retroactively because the legislature anticipated that it would lead to a certain amount of savings for the department, which would have been possible only if the amendment were to be applied retroactively to those defendants with pending cases at the time the amendment became effective.

The defendant correctly notes that, even if the language of Spec. Sess. P.A. 15-2, § 1, is plain and unambiguous, extratextual sources may be consulted if "the meaning of a provision cannot be gleaned from examining the text of the statute and other related statutes without yielding an absurd or unworkable result . . . ." *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 129 n.16, 848 A.2d 451 (2004); see also *State* v. *Salamon*, 287 Conn. 509, 524–25, 949 A.2d 1092 (2008). "[T]his court will not interpret statutes in such a way that would reach a bizarre or absurd result." (Internal quotation marks omitted.) *State* v. *Boyd*, 272 Conn. 72, 79, 861 A.2d 1155 (2004). The plain language of P.A. 15-244, however, does not support the defendant's argument. Nothing in P.A. 15-244 or its legislative history references Spec. Sess. P.A. 15-2, § 1, let alone a specific amount of fiscal savings anticipated by Spec. Sess. P.A. 15-2, § 1. This is not surprising because P.A. 15-244 was passed by the legislature before Spec. Sess. P.A 15-2.

Rather, to establish that the legislature intended Spec. Sess. P.A. 15-2, § 1, to create a certain amount of fiscal savings that would be possible through retroactive application only, the defendant makes a circular argument, relying on extratextual sources to show that a prospective only application would lead to the absurd result of *not* achieving those savings, thereby justifying the use of the same extratextual sources in interpreting Spec. Sess. P.A. 15-2, § 1.[12] The defendant argues that we may examine these extratextual sources to determine whether there is an absurd or unworkable result insofar as budget bills and associated implementing bills "are unique forms of legislation because they cannot be fully

understood on their own. Unlike the plain language contained within other statutes, budget bills are comprised of fiscal amounts and budget line items—numbers—that are not self-explanatory. Indeed, these bills can only be fully understood and acted upon by reference to documents prepared by the legislature's nonpartisan office, the Office of Fiscal Analysis . . . [including fiscal notes] and any implementing legislation the legislature chooses to pass to effectuate the revenue and expenditure levels contained in the budget." Thus, the defendant contends that we must consider Spec. Sess. P.A. 15-2, § 1, not just in light of P.A. 15-244 but also in light of any related analyses authored by the Office of Fiscal Analysis.

The defendant cites no case law, and we have found none, holding that budget bills are inherently ambiguous under § 1-2z and that extratextual sources must be considered to determine their meaning. Additionally, the defendant's argument conflicts directly with our rules of statutory construction, which prohibit this court from considering extratextual sources unless the plain language of the statute is ambiguous or leads to an absurd or unworkable result. See General Statutes 1-2z. In determining whether the plain language of P.A. Spec. Sess. 15-2, § 1, leads to an absurd or unworkable result, we are limited to considering its plain language and its relationship to other statutes. The defendant has not identified any language in Spec. Sess. P.A. 15-2, § 1, or P.A. 15-244 that supports his argument. The only arguable support for his argument exists in extratextual sources, such as the fiscal note attached to Spec. Sess. P.A. 15-2, § 1, which we cannot consider.[13] See *State* v. *Ramos*, 306 Conn. 125, 140–41, 49 A.3d 197 (2012) ("[a]lthough the defendant contends that our conclusion would mean that legislators whose comments during debate on [a] 1997 amendment indicated that they interpreted the statute differently and did not understand the plain meaning of the bill that they either sponsored or voted in favor of, this argument too depends on our resort to the legislative history that § 1-2z bars us from considering [in the absence of ambiguity or an absurd result]").

We note, however, that, even if the Office of Fiscal Analysis made a mistake regarding the retroactive application of Spec. Sess. P.A. 15-2, § 1, or a miscalculation about its anticipated fiscal savings, this alone would not necessarily lead to an absurd or unworkable result requiring retroactive application when the legislature has not expressed any manifest intent for retroactive application. Not only does neither P.A. 15-244 nor Spec. Sess. P.A. 15-2, § 1, mention retroactivity, but the legislative histories of both are void of any discussion regarding retroactivity. See *Mead* v. *Commissioner of Correction*, supra, 282 Conn. 326 (rejecting retroactive application of statute when "review of the legislative history . . . reveals that it is void of any clear and

unequivocal expression by the legislature for [the statute] to apply retroactively"). We acknowledge that fiscal notes authored by the Office of Fiscal Analysis "may bear on the legislature's knowledge of interpretive problems that could arise from a bill." *Butts* v. *Bysiewicz*, 298 Conn. 665, 688 n.22, 5 A.3d 932 (2010). But they "are not, in and of themselves, evidence of legislative intent . . . ." Id. The fiscal note at issue, by itself, is insufficient. Sections 54-194 and 1-1 (t) require an explicit expression of intent regarding retroactivity to overcome the presumption of prospective applicability only. Accordingly, viewing the plain language of Spec. Sess. P.A. 15-2, § 1, in the context of P.A. 15-244 does not lead to an absurd or unworkable result, and, thus, extratextual sources may not be considered.

Nevertheless, the defendant responds that it is illogical for the legislature to change the sentencing scheme on the basis of a change in moral policy and a recognition that the prior punishment was ineffective but not to apply that change retroactively. This argument, however, relies on legislative history, which we may not examine in light of our conclusion that the plain language of Spec. Sess. P.A. 15-2, § 1, is clear and unambiguous, and does not lead to an absurd or unworkable result. See *State* v. *Ramos*, supra, 306 Conn. 140. More fundamentally though, this court has stated that there is "nothing irrational in a legislative conclusion that individuals should be punished in accordance with the sanctions in effect at the time the offense was committed, a viewpoint encompassed by the savings statutes themselves." (Internal quotation marks omitted.) *State* v. *Kalil*, supra, 314 Conn. 555, quoting *Holiday* v. *United States*, supra, 683 A.2d 79. It also is perfectly rational for the legislature to conclude that the better policy is to offer statutory grace and apply the change retroactively to pending cases, or even to already sentenced defendants. According to its own words, along with our case law, however, the legislature must do so explicitly.

Accordingly, we conclude that the plain language of Spec. Sess. P.A. 15-2, § 1, clearly and unambiguously prohibits retroactive application, and this interpretation does not lead to an absurd or unworkable result, especially when viewed in context of the related savings statutes, §§ 54-194 and 1-1 (t). Therefore, we conclude that the Appellate Court correctly determined that the defendant was properly sentenced in accordance with the version of § 21a-279 (a) in effect on the date of the conduct at issue.

II

Alternatively, the defendant asks us to declare that Spec. Sess. P.A. 15-2, § 1, applies retroactively under the amelioration doctrine, which "provides that amendments to statutes that lessen their penalties are applied retroactively . . . ." (Internal quotation marks omitted.) *State* v. *Kalil*, supra, 314 Conn. 552. The defendant

acknowledges that this court only recently rejected the applicability of this doctrine in *Kalil*. Nonetheless, he argues that we should overrule *Kalil* because it is at odds with this court's long-standing retroactivity precedent.[14] The state responds that this court's holding in *Kalil* is supported by both the applicable savings statutes and § 1-2z, and that no grounds exist for overruling *Kalil*. We agree with the state.

Our determination of whether we should overrule a prior decision is guided by the doctrine of stare decisis, which "counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . [I]n evaluating the force of stare decisis, our case law dictates that we should be especially wary of overturning a decision that involves the construction of a statute. . . . When we construe a statute, we act not as plenary lawgivers but as surrogates for another policy maker, [that is] the legislature. In our role as surrogates, our only responsibility is to determine what the legislature, within constitutional limits, intended to do. . . . Once [we have construed a statute and] an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision. . . . Factors that may justify overruling a prior decision interpreting a statutory provision include intervening developments in the law, the potential for unconscionable results, the potential for irreconcilable conflicts and difficulty in applying the interpretation." (Internal quotation marks omitted.) *State* v. *Evans*, 329 Conn. 770, 804–805, 189 A.3d 1184 (2018), cert. denied,        U.S.      , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019).

In *Kalil*, the defendant argued that Public Acts 2009, No. 09-138, § 2 (P.A. 09-138), which increased the minimum value element of the second degree larceny statute from $5000 to $10,000, and which would have resulted in a downgrade of the defendant's second degree larceny charge to third degree larceny and a reduction in his sentence, applied retroactively under the amelioration doctrine. *State* v. *Kalil*, supra, 314 Conn. 550. P.A. 09-138, § 2, was enacted after the criminal conduct at issue but while the defendant's case was pending. Id., 551. In declining to adopt the amelioration doctrine, this court noted that, in determining whether a change in a criminal statute prescribing punishment applies retroactively, it is bound by the presumption against retroactivity contained in §§ 54-194 and 1-1 (t). Id., 552–53. Nevertheless, the defendant in *Kalil* argued that the amelioration doctrine should apply despite these savings statutes because the legislature did not intend for §§ 54-194 and 1-1 (t) to apply to ameliorative changes in law. Id., 556. This court disagreed. Id. First, as explained in detail in part I of this opinion, this court set

forth its extensive history of holding that these savings statutes apply to all changes to criminal statutes defining or prescribing punishment, even if the change benefits defendants, unless the legislature explicitly provides otherwise. Id., 553–54. Because "the legislature has not seen fit to amend the statutes in any material respects for more than 130 years," despite this case law, this court held that these savings statutes applied and weighed against adopting the amelioration doctrine. Id., 556.

Second, we held that this court was required to interpret changes to criminal sentencing schemes in light of these savings statutes for separation of powers reasons: "[W]hatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility . . . these are peculiarly questions of legislative policy. . . . Thus, although the rule of separation of governmental powers cannot always be rigidly applied . . . it must be remembered that the constitution assigns to the legislature the power to enact laws defining crimes and fixing the degree and method of punishment and to the judiciary the power to try offenses under these laws and [to] impose punishment within the limits and according to the methods . . . provided." (Citations omitted; internal quotation marks omitted.) Id., 554–55.

Third, this court determined that adopting the amelioration doctrine "could result in the unequal treatment of defendants who commit the [same] crime . . . on the same day but whose trials proceed at a different pace, thus resulting in some defendants being convicted under the law in effect at the time the crime was committed and others under the law enacted following commission of the crime." Id., 555. We concluded that it is "unlikely that the legislature would have intended for two similarly situated offenders to receive . . . disparate treatment solely on the fortuity of when their cases came to trial." (Internal quotation marks omitted.) Id., 555–56.

Fourth, in response to the defendant's argument that it would be illogical for the legislature to intend for an ameliorative statute to apply prospectively only, this court explained that there was "nothing irrational in a legislative conclusion that individuals should be punished in accordance with the sanctions in effect at the time the offense was committed, a viewpoint encompassed by the savings statutes themselves." (Internal quotation marks omitted.) Id., 555. Finally, this court rejected the defendant's reliance on case law from other jurisdictions that have adopted the amelioration doctrine, explaining that those jurisdictions relied on "their own unique state constitutional and jurisdictional constraints." Id., 556.

We see no reason why this court should overrule *Kalil*, which thoroughly considered this issue more than

six years ago. Although relatively recent, the holding in *Kalil* is premised on approximately 100 years of precedent, during which time the legislature took no action that would suggest any disagreement with our interpretation and application of §§ 54-194 and 1-1 (t). See *State* v. *Evans*, supra, 329 Conn. 806–807. Moreover, the analysis in *Kalil* is consistent with our analysis in part I of this opinion, showing that there are no conflicts or difficulty in applying the holding of *Kalil*. Accordingly, we are not persuaded that any " 'cogent reasons' " or " 'inescapable logic' " supports a departure from our decision in *Kalil*. Id., 805.

The defendant argues that *Kalil* nevertheless should be overruled because it is at odds with this court's prior precedent regarding retroactivity. Specifically, he argues that, prior to *Kalil*, this court routinely examined extratextual sources to determine the legislature's intent regarding retroactivity regardless of the amendment's plain language, and, thus, *Kalil*'s strict application of § 1-2z is contrary to prior case law.[15] The defendant contends that the holding in *Kalil* means that the savings statutes will always trump legislative intent. He contends that, instead, the savings statutes must yield to legislative intent, which is established in this case by extratextual sources. This argument relies on retroactivity cases decided before the enactment of § 1-2z in which this court considered both the plain language of the amendments and legislative history to determine the legislature's intent. See, e.g., *State* v. *Parra*, 251 Conn. 617, 622–23, 741 A.2d 902 (1999); *In re Daniel H.*, 237 Conn. 364, 376, 678 A.2d 462 (1996).

This court has held that the enactment of § 1-2z did not suggest that the legislature intended to overrule prior cases in which our courts employed methods of statutory interpretation that were inconsistent with § 1-2z. See *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 501, 923 A.2d 657 (2007). This would include prior retroactivity cases. We never have held, however, that all future retroactivity cases also can ignore the dictates of § 1-2z and the principles contained therein. Although the holdings in the cases the defendant cites remain good law, the principles of statutory construction that were used to reach those holdings have been replaced by § 1-2z,[16] which directs us not to examine extratextual sources unless the statute's plain language is ambiguous or creates an absurd or unworkable result. This does not mean that the savings statutes trump the legislature's intent. To the contrary, they require the legislature to be explicit in its intent regarding retroactivity. As explained, this court has interpreted §§ 54-194 and 1-1 (t) in this fashion for decades, and the legislature never has amended them, acquiescing to our interpretation of the legislature's own rules of construction. See *State* v. *Graham*, supra, 56 Conn. App. 511 ("[t]he defendant's request that this court adopt an 'amelioration doctrine,' whereby amendments to statutes that lessen their pen-

alties are applied retroactively is, in essence, asking this court to intervene in the legislative process to nullify by judicial fiat the legislature's savings statutes"). Contrary to the defendant's argument that a strict adherence to § 1-2z conflicts with our retroactivity jurisprudence, § 1-2z is consistent with our prior interpretations of §§ 54-194 and 1-1 (t), which require that the legislature use explicit—i.e., "plain"—language to express its intent to apply such a statute retroactively. This rule of construction is not of "our own making," as the concurring justice asserts, but of the legislature's making. (Emphasis omitted.) Section 1-2z is further evidence of the legislature's intent that its statutes be taken at face value, and not only supports but requires our conclusion that, unless explicitly stated otherwise, acts governed by §§ 54-194 and 1-1 (t) must be presumed to apply only prospectively.[17]

Finally, the defendant argues that the holding in *Kalil* is hostile to the clear legislative purpose of ameliorative amendments because these amendments manifest a shift in society's moral approach to punishment. In support of his position, the defendant relies on case law from other jurisdictions that have adopted the amelioration doctrine for this very reason. This argument is unpersuasive, however, because, as we already have explained in *Kalil*, we are bound by § 1-2z and by our savings statutes, which we consistently have interpreted as applying to ameliorative changes in criminal sentencing schemes. Accordingly, we decline the invitation to overrule *Kalil* and to adopt the amelioration doctrine.

The judgment of the Appellate Court is affirmed.

In this opinion ROBINSON, C. J., and McDONALD, KAHN and KELLER, Js., concurred.

* January 15, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] In 2014, when the defendant committed the offense of which he was convicted, General Statutes (Rev. to 2013) § 21a-279 (a) provided: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

At the time of the defendant's sentencing, General Statutes (Supp. 2016) § 21a-279 (a) provided: "(1) Any person who possesses or has under such person's control any quantity of any controlled substance, except less than one-half ounce of a cannabis-type substance and except as authorized in this chapter, shall be guilty of a class A misdemeanor.

"(2) For a second offense of subdivision (1) of this subsection, the court shall evaluate such person and, if the court determines such person is a drug-dependent person, the court may suspend prosecution of such person and order such person to undergo a substance abuse treatment program.

"(3) For any subsequent offense of subdivision (1) of this subsection, the court may find such person to be a persistent offender for possession of a controlled substance in accordance with section 53a-40."

Unless otherwise indicated, all references to § 21a-279 (a) in this opinion are to the 2013 revision of the statute.

[2] The Appellate Court ruled that the form of the trial court's judgment

was improper and that the trial court should have denied, not dismissed, the defendant's motion. See *State* v. *Bischoff*, 189 Conn. App. 119, 120, 124, 207 A.3d 28 (2019).

[3] Due to a scrivener's error, which we correct in brackets, the second certified question initially stated: "If the answer to the first certified question is 'no,' should this court overrule the retroactivity analysis contained in *State* v. *Kalil*, [supra, 314 Conn. 552] and apply the amelioration doctrine to give retroactive effect to Spec. Sess. P.A. 15-2, § 1?" *State* v. *Bischoff*, 331 Conn. 926, 927, 207 A.3d 28 (2019).

[4] The defendant argues that courts recently have placed too much significance on the effective date in determining retroactivity, treating it as dispositive. See *State* v. *Kalil*, supra, 314 Conn. 558 ("[T[he effective date of [Public Acts 2009, No. 09-138, § 2 (P.A. 09-138)], was October 1, 2009. This fact, and the absence of any express language in the provision referring to its retroactive application, indicates that the legislature intended P.A. 09-138, § 2, to be applied prospectively only."); *State* v. *Moore*, supra, 180 Conn. App. 123 ("The effective date of the 2015 amendment is October 1, 2015. . . . The amendment contains no express statement that it applies retroactively. . . . [T[he absence of any language stating that the amendment applies retroactively indicates that the legislature intended the amendment to apply prospectively only." (Citation omitted.)). He points out that, in *State* v. *Nathaniel S.*, supra, 323 Conn. 301, this court held that the effective date had no " 'particular significance' " in determining retroactivity.

There is a critical difference between Spec. Sess. P.A. 15-2, § 1, and the amendatory act we construed in *State* v. *Nathaniel S.*, supra, 323 Conn. 294–96. *Nathaniel S.* involved an amendment to the juvenile transfer statute that increased the age of a child whose case was subject to an automatic transfer to the adult docket by one year to fifteen years old. Id., 292; see Public Acts 2015, No. 15-183, § 1 (P.A. 15-183), codified at General Statutes (Supp. 2016) § 46b-127 (a) (1). The issue in *Nathaniel S.* was whether the presumption against retroactivity under General Statutes § 55-3, which applies only to substantive changes in the law, applied to the juvenile transfer amendment. We concluded that the amendment to the automatic transfer provisions was procedural in nature, which, under our case law, unlike a substantive amendment, is presumed to apply retroactively to all pending cases. *State* v. *Nathaniel S.*, supra, 301. It was in light of that presumption that the court stated that the effective date of P.A. 15-183 was of no " 'particular significance' ": i.e., the effective date of the repealing statute did not overcome the presumption of retroactivity. Id.

By contrast, the amendment at issue in the present case changes the punishment structure for the crime of possession of narcotics, thereby implicating §§ 54-194 and 1-1 (t), which apply to changes to criminal statutes prescribing punishment and create a presumption against retroactivity. The defendant does not contend that we are tasked with deciding whether Spec. Sess. P.A. 15-2, § 1, is substantive or procedural under § 55-3. Thus, unlike in *Nathaniel S.*, in which the defendant sought to use an effective date to *rebut* an applicable presumption, the effective date of Spec. Sess. P.A. 15-2, § 1, *buttresses* the presumption of prospective application only.

[5] In enacting amendments—ameliorative or otherwise—our legislature explicitly repeals the prior version of the amended statute. Connecticut may be unique in this respect. Thus, this court consistently has held, and the defendant does not contest, that amendments and substitutions to statutes are the equivalent of repeals, and, thus, the savings statutes apply to any change—amendment, substitution, or repeal—to a criminal statute prescribing or defining punishment. See *Simborski* v. *Wheeler*, 121 Conn. 195, 200, 183 A. 688 (1936) (amendment or substitution "constitutes just as complete and effective a repeal of the provisions in the place of which the substitution is made as though they had been in terms repealed"); see also *State* v. *Kalil*, supra, 314 Conn. 553 n.9 (difference between repeal and amendment "is a distinction without a difference, because the legislature typically repeals an existing statute before enacting its replacement containing the amended language"). Thus, there is no dispute in the present case that the legislature "repealed" the existing possession of narcotics statute in its entirety before replacing it with the new sentencing scheme. See Spec. Sess. P.A. 15-2, § 1 ("[s]ection 21a-279 of the general statutes is repealed and the following is substituted in lieu thereof (Effective October 1, 2015)" (emphasis omitted)).

[6] An example of the legislature's expressly providing for retroactive applicability is No. 11-51 of the 2011 Public Acts, § 22, codified at General Statutes § 18-98e (a), which provides in relevant part that "any person sentenced to a term of imprisonment for a crime committed on or after October 1, 1994,

and committed to the custody of the Commissioner of Correction on or after said date . . . may be eligible to earn risk reduction credit toward a reduction of such person's sentence, in an amount not to exceed five days per month, at the discretion of the Commissioner of Correction for conduct as provided in subsection (b) of this section occurring on or after April 1, 2006." This amendment specifically provided that it retroactively applied to inmates who committed crimes on or after October 1, 1994.

[7] The defendant makes this argument in his initial brief in relation to his second claim, regarding the amelioration doctrine, and in his reply brief in relation to his first claim in response to the state's argument regarding the proper construction of Spec. Sess. P.A. 15-2, § 1. For efficiency, we address this argument here.

[8] The concurring justice disagrees that "our earlier case law suggests that the outcome in *Kalil* was foreordained by 'extensive case law' . . . ." Footnote 2 of the concurring opinion. Specifically, it does not view our prior case law as ever having decided "the question of whether the amelioration doctrine could or should be adopted as part of our laws . . . ." Id. Although this court may not have used the word "amelioration," our prior case law clearly has addressed whether changes to criminal statutes defining or prescribing punishment that provide a benefit to defendants apply retroactively under §§ 54-194 and 1-1 (t), which is the same issue in different verbiage. It is also true that, in *Castonguay* v. *Commissioner of Correction*, 300 Conn. 649, 16 A.3d 676 (2011), we stated that "[t]his court has not previously held that ameliorative changes to criminal statutes apply retroactively and we express no opinion on that question here." Id. 663 n.14. But that statement related to General Statutes § 55-3, which is the savings statute governing substantive changes to laws in general, not §§ 54-194 and 1-1 (t), which apply specifically to changes in laws that define or prescribe punishment. See *Harlow* v. *Planning & Zoning Commission*, 194 Conn. 187, 194, 479 A.2d 808 (1984) (§ 55-3 embodies general presumption that legislation is intended to operate prospectively). Moreover, the *Castonguay* footnote is consistent with our prior law, as this court *never* has "held that ameliorative changes to criminal statutes *apply* retroactively . . . ." (Emphasis added.) *Castonguay* v. *Commissioner of Correction*, supra, 663 n.14. On the other hand, we specifically *have* held that changes to criminal statutes that benefit defendants *do not apply* retroactively in the absence of a clear intent from the legislature.

[9] Despite our lengthy history of applying these savings statutes to all changes to criminal statutes prescribing punishment, the defendant relies on a footnote from *State* v. *Nathaniel S.*, supra, 323 Conn. 290, for his contention that there remains an open question regarding whether the savings statutes would bar retroactive application of a change to a criminal statute that benefits a defendant. We said in that case: "Because we conclude that [the amendment at issue] is procedural rather than substantive, we need not determine whether [General Statutes] § 55-3 would bar retroactive application of a statute that, while substantive in nature, affords only benefits to a criminal defendant and imposes no new obligations on either the defendant or other persons." (Emphasis omitted.) Id., 295 n.1. Not only is the footnote in *Nathaniel S.* nonbinding dictum, as already discussed, it involves a different savings statute than either of the statutes at issue in this case. See footnote 4 of this opinion. As also already discussed, this court has a long history of applying §§ 54-194 and 1-1 (t) to any amendment that involves the defining or prescribing of punishment, regardless of whether the amendment increases or decreases punishment.

[10] The defendant argues that this court should interpret its savings statutes in a manner similar to how courts in other jurisdictions have interpreted their savings statutes as not applying to ameliorative changes to sentencing schemes. But as this court previously has stated, "[b]ecause of the differences in the statutory language, governing statutory regimes, and controlling legal precedents, those decisions are of limited use in construing the intent of the Connecticut legislature . . . ." *State* v. *Nathaniel S.*, supra, 323 Conn. 301.

[11] The defendant responds that, pursuant to *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), we cannot presume legislative acquiescence unless the legislature has amended these statutes to adopt explicitly this court's interpretation of them. See id., 521–22 ("We also have recognized that legislative inaction [following our interpretation of a statute] is not necessarily legislative affirmation . . . . [T]he legislature's failure to amend a statute in response to our interpretation of that provision is not dispositive of the issue because legislative inaction is not always the best of guides to legisla-

tive intent." (Citations omitted; internal quotation marks omitted.); id., 525 (legislative acquiescence is strongest when legislature has amended statute at issue in response to judicial interpretation but did not amend portion at issue, despite judicial interpretation).

The defendant misapplies our holding in *Salamon*. In *Salamon*, this court did not hold that legislative inaction cannot be considered in determining legislative intent but, rather, held that legislative inaction did not *establish* the legislature's intention regarding this state's kidnapping statute, as "the issue presented by the defendant's claim is not one that is likely to have reached the top of the legislative agenda because the issue directly implicates only a relatively narrow category of criminal cases"; id., 523; and because the statutory section at issue had not been subject to any amendment since 1969. Id., 525–56.

The present case is distinguishable from *Salamon* because the issue of whether §§ 54-194 and 1-1 (t) apply to all changes to criminal statutes pre-scribing punishment *is* an issue "likely to have reached the top of the legislative agenda"; id., 523; for the following reasons: this court's interpreta-tion of §§ 54-194 and 1-1 (t) dates back to at least the 1930s; this court has addressed this issue previously on numerous occasions; and our prior interpretation of these statutes has had broad impact, implicating any crimi-nal case involving a sentencing scheme that the legislature has amended.

[12] Specifically, the defendant relies on the fiscal note authored by the Office of Fiscal Analysis attached to Spec. Sess. P.A. 15-2, § 1, which provides in relevant part: "The bill [Spec. Sess. P.A. 15-2, § 1] makes various changes to statutes regarding drug possession that implement P.A. 15-244. The changes result in an estimated savings to the [d]epartment . . . of $6.6 million in [fiscal year 2016] and at least $12.4 million in [fiscal year 2017] through reduction in prison population and corresponding facility closures. However, P.A. 15-244 includes a higher savings target of $ 12.5 million in [fiscal year 2016] and $18.9 million in [fiscal year 2017] in the [d]epartment . . . ."

[13] The only reference in the legislative history of P.A. 15-244 to fiscal savings for the department is a single statement that the budget bill requires the department to save $5.3 million. See 58 H.R. Proc., Pt. 23, 2015 Sess., p. 7858, remarks of Representative Toni E. Walker ("We also had some savings in our budget. . . . We ended up at approximately 20 million [dol-lars] . . . . And the way we have it broken down now is 5 million [dollars] for the Department of Developmental Services, 5.3 million [dollars] for the . . . Department [of Correction], and then we have given the responsibility to the Secretary of [the] Office of [Policy and Management] to achieve another . . . 10 million [dollars] from the other collective agencies."). There is no mention in the legislative history of how these savings will occur, and it differs from the savings anticipated in the fiscal note relied on by the defendant.

[14] The defendant also argues that *Kalil*'s prohibition against applying the amelioration doctrine does not apply to the present case because Spec. Sess. P.A. 15-2, § 1, is distinguishable from the statute at issue in *Kalil* in that Spec. Sess. P.A. 15-2, § 1, directly interacts with the budget bill that it was meant to implement, and, thus, not applying this doctrine would lead to an absurd and unworkable result. As explained in part I of this opinion, prospective only application of Spec. Sess. P.A. 15-2, § 1, does not lead to an absurd or unworkable result in light of P.A. 15-244, and, thus, we reject this argument.

[15] The defendant also argues that *Kalil*'s strict application of § 1-2z was contrary to prior case law because it treated the effective date of legislation as dispositive of the legislature's intent regarding retroactivity. We reject this argument for the same reasons we rejected it in part I of this opinion.

[16] In two sentences in his reply brief, the defendant argues that, to the extent that § 1-2z prevents him from relying on extratextual sources to establish legislative intent regarding retroactivity, that statute violates the separation of powers doctrine because "the interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function." We decline to review this claim, which the defendant raised, for the first time, in his reply brief. See, e.g., *State* v. *Devalda*, 306 Conn. 494, 519 n.26, 50 A.3d 882 (2012).

[17] If we were to conclude, as the concurring justice does, that our construc-tion would "defeat and frustrate the will of the legislature," we would of course reach a different conclusion or overrule *Kalil*. Statutory construction, after all, is not a means unto itself but, rather, a process of divining the legislature's will. Although applying Spec. Sess. P.A. 15-2, § 1, retroactively or adopting and applying the amelioration doctrine to it might be *consistent*

with the purpose of the amendment—to reverse policies that led to mass incarceration for mere drug possession and to provide a second chance, including treatment resources, to drug users—that does not mean such an application is *required*. Rather, this bipartisan legislation, described by several legislators as a first step that might require future legislation; see 58 S. Proc., Pt. 12, June, 2015 Spec. Sess., pp. 3547–48, remarks of Senator John A. Kissel (describing amendment as "trying a new path, a new methodology," that might require the legislature "to go back and tweak it and change it"); id., p. 3550, remarks of Senator Gary A. Winfield (although voting in favor of the amendment, "there's more that we need to do"); id., p. 3551, remarks of Senator Catherine C. Osten (this amendment was "a beginning of [our] finally dealing with our ever burgeoning . . . prison population"); id., p. 3552, remarks of Senator Leonard A. Fasano (this amendment was "the tip of the iceberg"); id., p. 3554, remarks of Senator Martin M. Looney ("we'll continue to work on these issues"); could have been the result of a compromise, including with legislators who believed that "individuals should be punished in accordance with the sanctions in effect at the time the offense was committed." (Internal quotation marks omitted.) *State* v. *Kalil*, supra, 314 Conn. 555. Ultimately, though, we do not examine this legislative history for the same reason the majority in *Kalil* did not address legislative history: because the plain language of Spec. Sess. P.A. 15-2, § 1, clearly and unambiguously prohibits retroactive application in light of the presumption of prospective only intent arising not from our holding in *Kalil* but from our savings statutes. Thus, the issue is not whether the amelioration doctrine would be consistent with Spec. Sess. P.A. 15-2, § 1, but whether the amelioration doctrine is consistent with our savings statutes. If we were to adopt the amelioration doctrine, as the defendant requests, it would apply to any amendment to criminal statutes that benefits criminal defendants. The legislative history underlying a single amendment alone does not justify adopting such a broadly applicable doctrine.

―――――――――――――――――